IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL A. MACVAUGH,<br>    Plaintiff,<br><br>v.<br><br>COUNTY OF MONTGOMERY,<br>    Defendant. | :<br>:<br>:<br>:     CIVIL ACTION NO. 17-4568<br>:<br>:<br>: |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                                                                            **March 27, 2018**

       Plaintiff Michael A. MacVaugh, a 911 dispatcher working for the County of Montgomery, alleges that the County violated provisions of the Americans with Disabilities Act ("ADA"),[1] the Pennsylvania Human Relations Act ("PHRA"),[2] and the Family Medical Leave Act ("FMLA")[3] in terminating his employment in light of his ongoing struggle with Crohn's disease. Specifically, Plaintiff raises disability discrimination, retaliation, and hostile work environment claims under the ADA and the PHRA, as well as a retaliation claim under the FMLA. The County has moved to dismiss, arguing that Plaintiff failed to exhaust administrative remedies and failed to state a claim upon which relief can be granted. For reasons that follow, the Motion will be granted in part and denied in part.

**I.    BACKGROUND**

       The Complaint alleges the following facts, which are assumed to be true for purposes of the Motion to Dismiss. Plaintiff worked for the County's Emergency Services Department as a 911 dispatcher for nine years—from 2007 to 2016.[4] Plaintiff generally worked two to three days

---

[1] 42 U.S.C. § 12101, *et seq.*

[2] 43 Pa. Stat. § 951, *et seq.*

[3] 29 U.S.C. § 2601, *et seq.*

[4] Compl. at ¶¶ 16-18.

each week in twelve-hour shifts.[5] In May 2008, Plaintiff was diagnosed with Crohn's disease—a chronic, autoimmune disorder that causes "extreme abdominal pain, diarrhea and fevers," and requires life-long medical treatment.[6] As a result of his Crohn's disease, Plaintiff applied for and received intermittent FMLA leave from the County on March 5, 2011, December 9, 2011, and December 9, 2012.[7]

In November 2013, Plaintiff experienced a "flare-up" of his Crohn's disease that required hospitalization.[8] On November 24, 2013, he emailed his supervisors to inform them that he would be out sick because of the flare-up.[9] Plaintiff requested FMLA leave, but did not receive a decision on his request, and was instead cited for "excessive absenteeism."[10] Plaintiff also requested a transfer to a position that was "more administrative in nature," but this transfer was denied.[11] Plaintiff applied for two other positions with the County that would have required him to work eight-hour shifts as opposed to twelve-hour shifts, but was not awarded either position.[12]

In 2015, Plaintiff experienced further complications with his Crohn's disease, and underwent major abdominal surgery that required him to be out of work for a month.[13] When he returned to work, he was permitted to temporarily work eight-hour shifts, but then went back to his regular twelve-hour shifts.[14] It was after this surgery that other employees began treating

---

[5] *Id.* at ¶ 19.

[6] *Id.* at ¶¶ 24-25.

[7] *Id.* at ¶ 39.

[8] *Id.* at ¶ 26.

[9] *Id.*

[10] *Id.* at ¶¶ 29, 31-32. Plaintiff alleges that although the County later informed him that his excessive absenteeism citations would be removed from his employment file, these citations were included in his file as of his termination in 2016. *Id.* at ¶ 33.

[11] *Id.* at ¶ 34.

[12] *Id.* at ¶ 35.

[13] *Id.* at ¶ 41.

[14] *Id.* at ¶¶ 42-43.

Plaintiff differently and excluding him from trainings and meetings because he was "sick."[15] In February 2016, Plaintiff underwent double hip replacement surgery, necessitated by a further complication of his Crohn's disease.[16]

Plaintiff alleges that upon his return to work after his hip surgery, he experienced problems with his coworkers and supervisors. For example, one supervisor chastised him for raising a concern during a meeting, and another warned him "that he needed to watch his etiquette on the dispatch radio."[17] In July 2016, he was called into a meeting with two of his supervisors where he was "warned that he was out of his seat too much and too long" and that his breaks would be monitored.[18] The following month, Plaintiff was called into the office and told that his coworkers thought he was sleeping on the job. Although Plaintiff informed his supervisors that he was not sleeping but was instead suffering from dry eye problems associated with Crohn's disease, he was sent home for allegedly sleeping.[19] On October 16, 2016, Plaintiff applied for FMLA leave, but did not receive a response.[20] Rather, on October 24, 2016, Plaintiff was again accused of sleeping on the job and was terminated.[21]

On February 9, 2017, Plaintiff filed a dual charge with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission ("EEOC"), and shortly thereafter received a right-to-sue letter from the EEOC.

---

[15] *Id.* at ¶¶ 44-46.

[16] *Id.* at ¶ 47.

[17] *Id.* at ¶¶ 49-50.

[18] *Id.* at ¶ 54 (internal quotation marks omitted).

[19] *Id.* at ¶¶ 55-56.

[20] *Id.* at ¶¶ 69-62.

[21] *Id.* at ¶¶ 64, 68-79.

## II. LEGAL STANDARD

Dismissal for failure to state a claim is appropriate if the complaint fails to allege facts sufficient to establish a plausible entitlement to relief.[22] In evaluating a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court "take[s] as true all the factual allegations of the [complaint] and the reasonable inferences that can be drawn from them," but "disregard[s] legal conclusions and recitals of the elements of a cause of action, supported by mere conclusory statements."[23] Instead, to prevent dismissal, a complaint must "set out sufficient factual matter to show that the claim is facially plausible."[24] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[25]

## III. ANALYSIS

### A. Exhaustion of Administrative Remedies

Defendant contends Plaintiff did not exhaust his administrative remedies because he failed to timely file his ADA and PHRA claims.[26] "A plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief."[27] This includes timely filing

---

[22] *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

[23] *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

[24] *Fowler*, 578 F.3d at 210 (citation and internal quotation marks omitted).

[25] *Santiago*, 629 F.3d at 128 (citation and internal quotation marks omitted).

[26] Unlike Plaintiff's other statutory claims, "the FMLA does not require a plaintiff to pursue administrative remedies before filing a complaint in federal court." *Thomas v. St. Mary Med. Ctr.*, 22 F. Supp. 3d 459, 472 n.19 (E.D. Pa. 2014) (citations omitted). Therefore, Defendant's failure to exhaust argument relates only to Plaintiff's ADA and PHRA claims.

[27] *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (internal quotation marks and citation omitted).

a charge of discrimination with the PHRC and the EEOC before bringing suit.[28] For a charge to be timely, the plaintiff must normally file his charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice took place.[29] "However, in a 'deferral state' such as Pennsylvania, that is, a state which has a state or local law prohibiting the practice alleged and established or authorizing the state or local authority to grant or seek relief from practices prohibited under the ADA, the plaintiff has not 180 but 300 days from the date of the alleged unlawful employment practice in which to file [his] charge of discrimination with the EEOC."[30] The EEOC will then investigate the charge, and, if warranted, will issue a right-to-sue letter allowing the plaintiff to initiate a private action.

Plaintiff dual-filed a charge with the PHRC and the EEOC on February 9, 2017. The Court therefore looks to conduct occurring from April 15, 2016 to February 9, 2017. The Complaint alleges that during this period, Plaintiff had returned to work after his second major surgery, and began experiencing problems with his coworkers and supervisors. For example, in July 2016, Plaintiff was called into a meeting with two of his supervisors during which he was criticized for taking frequent and long bathroom breaks, and was warned that his breaks would be monitored.[31] During this period, Plaintiff was criticized for his "etiquette on the dispatch radio," despite never receiving such a critique for more than eight years on the job.[32] In August 2016, Plaintiff was called into a supervisor's office and was accused to sleeping on the job. Although Plaintiff tried to explain to his supervisors that he was not sleeping but was instead

---

[28] 42 U.S.C. § 12117(a) (applying the administrative enforcement procedures of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, to ADA claims).

[29] *Gloeckl v. Giant Eagle, Inc.*, 176 F. App'x 324, 325-26 (3d Cir. 2006) (citing 42 U.S.C. § 2000e-5(e)(1)).

[30] *Peter v. Lincoln Tech. Inst., Inc.*, 255 F. Supp. 2d 417, 426 (3d Cir. 2002) (citing 42 U.S.C. § 2000e-5(e)(1); *Seredinksi v. Clifton Precision Prods. Co.*, 776 F.2d 56 (3d Cir. 1985)). "The extension of the filing time to 300 days is effective regardless of whether the plaintiff ever files a charge with the authorized state agency." *Id.*

[31] Compl. at ¶ 54.

[32] *Id.* at ¶¶ 50-51.

5

suffering from dry eye problems associated with Crohn's disease, he was sent home.[33] On October 16, 2016, Plaintiff applied for FMLA leave, but did not receive a decision on his application. Instead, eight days later, Plaintiff was again accused of sleeping on the job and was terminated.[34] To the extent that these facts allege claims under the ADA and PHRA, these claims will not be dismissed for failure to exhaust administrative remedies.

Although the above-mentioned conduct occurred within the 300-day time period, Plaintiff also seems to allege Defendant should be held liable for discrete acts that occurred years before. Specifically, Plaintiff appears to assert that, in 2014, he applied for three open positions with the County for jobs that were more administrative in nature to accommodate his disability, but that he was denied these transfers.[35] To the extent that Plaintiff seeks to state an ADA or PHRA claim based on these transfers, such a claim would be untimely, and will be dismissed.[36]

### B. Failure to State a Claim

#### 1. Disability Discrimination, Retaliation, and Hostile Work Environment Claims in Violation of the ADA and PHRA (Count I)

##### a. Disability Discrimination

To plead a *prima facie* case of disability discrimination under the ADA or PHRA,[37] "a plaintiff must show that he is (1) disabled within the meaning of the ADA, (2) can perform the

---

[33] *Id.* at ¶¶ 55-56.

[34] *Id.* at ¶¶ 64, 68-79.

[35] *Id.* at ¶¶ 34-35.

[36] The Complaint does not specify a date with respect to two of the three job transfers mentioned above. *See id.* at ¶ 35. The Court will afford Plaintiff the opportunity to amend the Complaint with respect to these job transfers to include the relevant dates in an effort to demonstrate that his claims based upon Defendant's denial of the transfers were timely. However, if Defendant's denial of Plaintiff's transfer requests occurred more than 300 days prior to the filing of the charge with the EEOC, claims based on these transfer requests will be precluded. *See Mercer v. SEPTA*, 608 F. App'x 60, 63 (3d Cir. 2015) ("A reasonable accommodation request is a one-time occurrence rather than a continuing practice, and therefore, does not fit under the continuing violations theory.") (citation omitted).

[37] The ADA and PHRA are "interpreted coextensively." *Castellani v. Bucks Cty. Municipality*, 351 F. App'x 774, 777 (3d Cir. 2009).

essential functions of his job with or without reasonable accommodation, and (3) suffered an adverse employment action as a result of discrimination based on his disability."[38]

Here, Plaintiff stated that he suffers from Crohn's disease, which courts have recognized as a disability within the meaning of the ADA.[39] He has also alleged that he was able to perform the essential functions of his job as a 911 dispatcher, which includes receiving 911 calls, providing aid, and connecting callers to the appropriate first responders, with or without reasonable accommodation.[40] For example, Plaintiff performed his duties as a 911 dispatcher for more than eight years without incident. He also suggested that the reasonable accommodation of temporarily reducing his shift from twelve to eight hours allowed him to return to work shortly after undergoing surgery related to his Crohn's disease.[41] Furthermore, Plaintiff alleged that he suffered an adverse employment action by being terminated based on his disability.[42] Despite explaining to his supervisors that he suffered from dry eye symptoms as a side effect of his Crohn's disease, he was fired after being falsely accused of sleeping during his shift.[43] He also alleged that his termination occurred shortly after he requested FMLA leave.[44] Plaintiff, therefore, has stated a claim for disability discrimination under the ADA and PHRA.

---

[38] *Feliciano v. Coca-Cola Refreshments USA, Inc.*, 281 F. Supp. 3d 585, 592 (E.D. Pa. 2017) (citing *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000); *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

[39] *See Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 393 (E.D. Pa. 2011) ("Several district courts have found that Crohn's disease, which often results in difficulty controlling one's bowels and eliminating waste, is a disability under the ADA.") (citing cases).

[40] *See Hohider v. United Parcel Serv.*, 574 F.3d 169, 191 (3d Cir. 2009) ("[The ADA] does not prohibit discrimination against any individual on the basis of disability, but, as a general rule, only protects from discrimination those disabled individuals who are able to perform, with or without reasonable accommodation, the essential functions of the job they hold or desire.") (emphasis omitted); *see also White v. United Parcel Serv.*, No. 07-2464, 2008 WL 3895784, at *8-9 (finding that the plaintiff had failed to show that he could perform the essential functions of his job as a full time package car driver).

[41] Compl. at ¶¶ 42-43.

[42] *Id.* at ¶¶ 79, 81.

[43] *Id.* at ¶¶ 55-56.

[44] *See Isley v. Aker Phila. Shipyard, Inc.*, 275 F. Supp. 3d 620, 628 (E.D. Pa. 2017) (finding that there must be a causal connection between the plaintiff's termination and his disability).

### b. Retaliation

To state a retaliation claim under the ADA or PHRA, the employee must allege (1) a protected employee activity, (2) an adverse employment action, and (3) a causal connection between the protected activity and the adverse action.[45]

Accepting all factual allegations as true, Plaintiff has plausibly stated a claim for retaliation under the ADA and PHRA. First, Plaintiff alleged that he engaged in protected conduct by taking FMLA leave on several occasions due to his Crohn's disease, which included time spent recovering from major abdominal and hip surgeries.[46] Plaintiff also submitted a final FMLA leave request to his supervisors on October 16, 2016. Second, Plaintiff stated that he suffered from an adverse employment action, *i.e.*, termination, after submitting this final FMLA leave request.[47] Third, Plaintiff alleged a causal link between his final request for FMLA leave and his termination.[48] In fact, his firing occurred a mere eight days after his leave request.[49] He also has pleaded facts suggesting that his supervisors were increasingly antagonistic towards him leading up to his termination, stating that his supervisors chastised him in front of his coworkers, warned him about taking inappropriately long breaks, and falsely accused him of sleeping on the job. Thus, Plaintiff has stated a claim for retaliation under the ADA and PHRA.

### c. Hostile Work Environment

To make out a hostile work environment claim under the ADA or PHRA, a plaintiff must allege that: (1) he is a qualified individual with a disability under the ADA, (2) he was subject to

---

[45] *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *Kurylo v. Parkhouse Nursing & Rehab. Ctr., LP*, No. 17-004, 2017 WL 1208065, at *6 (E.D. Pa. Apr. 3, 2017).

[46] Compl. at ¶ 39.

[47] *See Schneider v. Works*, 223 F. Supp. 3d 308, 315 (E.D. Pa. 2016) (noting that the plaintiff had alleged that he suffered an adverse employment action by being terminated).

[48] *See Bernhard v. Brown & Brown of Lehigh Valley, Inc.*, 720 F. Supp. 2d 694, 703 (E.D. Pa. 2010).

[49] *See id.* (stating that the plaintiff's firing "a mere eight days after his request for additional leave" was sufficient to state a claim for retaliation under the ADA and PHRA).

unwelcome harassment, (3) the harassment was based on his disability or request for an accommodation, (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment, and (5) the employer knew or should have known of the harassment and failed to take prompt, effective remedial action.[50]

The "severe or pervasive" element requires conduct that is sufficient "to alter the conditions of [the plaintiff's] employment and to create an abusive working environment."[51] In determining whether a work environment is sufficiently abusive or hostile, courts look at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[52]

In this case, the Complaint alleges that after returning from his second surgery, Plaintiff was chastised in a meeting, was criticized about his "etiquette on the dispatch radio," was called into his supervisor's office where he was warned about being "out of his seat too much," and was told that his breaks would be monitored.[53] Plaintiff also alleged that he attempted to take FMLA leave, but instead of being granted this request, his supervisors falsely accused him of sleeping on the job and fired him.[54] Taken together over the final eight-month period from Plaintiff's second surgery leading up to his termination, these actions suggest the type of "severe or

---

[50] *Lowenstein v. Catholic Health East*, 820 F. Supp. 2d 639, 646-47 (E.D. Pa. 2011) (citing *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999)).

[51] *See Walton*, 168 F.3d at 666-67 (equating the hostile work environment analysis in Title VII and the ADA); *Newman v. GHS Osteopathic, Inc. Parkview Hosp. Div.*, 60 F.3d 153, 157 (3d Cir. 1995) ("In the context of employment discrimination, the ADA, ADEA and Title VII all serve the same purpose—to prohibit discrimination in employment against members of certain classes. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well.").

[52] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

[53] Compl. at ¶¶ 49-50, 54.

[54] *Id.* at ¶¶ 55-56.

pervasive" discriminatory conduct that could create an abusive or hostile work environment.[55] For purposes of the Motion to Dismiss, Plaintiff has stated a hostile work environment claim under the ADA and PHRA.

### 2. Retaliation in Violation of the FMLA (Count II)

"Courts have recognized that the FMLA creates two essentially distinct causes of action."[56] First, an interference claim prohibits an employer from acting to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" secured by the Act.[57] Second, a "retaliation" or "discrimination" claim makes it unlawful for an employer to discharge or in any other manner discriminate against the employee for exercising, or attempting to exercise, his FMLA rights.[58]

"To state a claim for FMLA retaliation, an employee must allege that (1) [he] engaged in protected conduct; (2) [he] suffered an adverse employment action; and (3) the adverse action was causally related to the request for leave."[59] A plaintiff may establish a causal link between the protected right and the adverse employment decision by temporal proximity or evidence of antagonistic conduct.[60] "As with other retaliation claims, the Court utilizes the burden-shifting

---

[55] *Compare Lowenstein,* 820 F. Supp. 2d at 647 (concluding that the employer's repeated warnings for the employee's six absences during a nine-month period, coupled with other discipline and rejection of the employee's notes from her doctor, considered together, stated severe or pervasive conduct to state a hostile work environment claim), *with Ballard-Cater v. Vanguard Grp.*, 703 F. App'x 149, 152 (3d Cir. 2017) (concluding that remarks such as "I forgot you were deaf," and "we just said that you weren't listening," among a few others made over the course of three years, were not severe or pervasive for the hearing-impaired plaintiff to prevail on a hostile work environment claim under the ADA).

[56] *Peter,* 255 F. Supp. 2d at 438 (citations omitted).

[57] *Thomas*, 22 F. Supp. 3d at 472 (citing 29 U.S.C. § 2615(a)(1); *Hayduk v. City of Johnstown*, 386 F. App'x 55, 59 (3d Cir. 2010)).

[58] *Id.* (citations omitted). Count II alleges "discrimination and retaliation" under the FMLA. Compl. at 11. Because "discrimination" and "retaliation" are combined into one type of FMLA claim, the Court will construe the pleading as alleging one FMLA claim for purposes of resolving this Motion.

[59] *Feliciano*, 281 F. Supp. 3d at 594.

[60] *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007).

framework set forth by the United States Supreme Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973)."[61]

Here, Plaintiff allegedly engaged in protected conduct by requesting leave on October 16, 2016, due to complications with his Crohn's disease.[62] However, Plaintiff suffered an adverse employment action when he was terminated on October 24, 2016.[63] As his firing occurred a mere eight days after his leave request,[64] and he pleaded facts suggesting that his supervisors were becoming increasingly hostile towards him by chastising him in front of his coworkers, monitoring his restroom breaks, and falsely accusing him of sleeping on the job,[65] Plaintiff has also alleged a causal link to state a FMLA retaliation claim.

### C. Amendment of the Complaint

Plaintiff has requested leave to amend the Complaint. Federal Rule of Civil Procedure 15(a) provides that the Court should "freely give leave [to amend] when justice so requires."[66] Among the grounds that could justify a denial of leave to amend are undue delay, bad faith,

---

[61] *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 511 (E.D. Pa. 2012) (internal quotation marks and citation omitted).

[62] Compl. at ¶ 39. *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) ("Simply put, this Court has never held that an employee fired after requesting FMLA leave but before the leave begins cannot recover for retaliation . . . . Accordingly, we interpret the requirement that an employee 'take' FMLA leave to connote invocation of FMLA rights, not actual commencement of leave."); *see also Koller*, 850 F. Supp. 2d at 511 ("To demonstrate that FMLA leave was taken, an employee need not actually commence the leave, but must merely *invoke* the leave.").

[63] *See Koller*, 850 F. Supp. 2d at 511-12 ("With respect to the adverse employment decision requirement, termination may be deemed an adverse employment decision for this purpose.") (internal quotation marks and citation omitted).

[64] *See Lichtenstein v. Univ. of Pittsburg Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012) (finding that the plaintiff's termination less that one week after she invoked her right to FMLA leave was sufficient to establish causation); *see also Fitzgerald v. Shore Memorial Hosp.*, 92 F. Supp. 3d 214, 233 (D.N.J. 2015) (finding that the plaintiff's firing just five days after her absence from work "qualifies as unusually suggestive timing and provides a causal link" between the plaintiff's absence and her termination) (internal quotation marks and citation omitted).

[65] Compl. at ¶¶ 49-50, 54-56, 64. *See Szostek v. Drexel Univ.*, No. 12-2921, 2013 WL 4857989, at *9 (E.D. Pa. Sept. 11, 2013) (concluding that there was no causal link between the adverse employment decision and the request for FMLA leave on summary judgment, finding that the evidence demonstrated that no other employee made any comments to the plaintiff about his FMLA request and, in fact, he was encouraged to reapply for FMLA leave).

[66] Fed. R. Civ. P. 15(a)(2).

11

dilatory motive, prejudice, and futility.[67] "[A] district court need not grant leave to amend . . . if 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'"[68] Here, amendment of the Complaint may not be futile, as it could clarify whether Plaintiff's claims based on Defendant's denial of the requested job transfers were timely filed with the EEOC. Therefore, Plaintiff may amend consistent with the limitations set forth in this opinion.

**IV. CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss will be granted in part and denied in part. Plaintiff will be granted leave file an amended complaint, in accordance with the limitations set forth in this opinion. An appropriate order follows.

---

[67] *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

[68] *Kundratic v. Thomas*, 407 F. App'x 625, 630 (3d Cir. 2011) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).